CA No. 16-17076

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

\*\*\*

ELENA RODRIGUEZ-MALFAVON,

          Plaintiff-Appellant,

v.

CLARK COUNTY SCHOOL
DISTRICT, et al.

          Defendants-Appellees.

D.C. No. 2:12-cv-01673-APG-PAL
(Nevada, Las Vegas)

Appeal from the United States District Court
for the District of Nevada

**APPELLANT'S OPENING BRIEF**

Richard Segerblom, Esq.
Nevada Bar No. 1010
701 E. Bridger Ave., # 520
Las Vegas, NV 89101
Telephone: 702-388-9600
Facsimile: 702-385-2909
Email: rsegerblom@lvcoxmail.com
*Attorney for Plaintiff-Appellant*
*Elena Rodriguez-Malfavon*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iv

STATEMENT OF JURISDICTION ........................................................1

ISSUE ON APPEAL ............................................................................1

STATEMENT OF THE CASE ...............................................................2

    I. RELEVANT FACTS .....................................................................2

        A. Rodriguez-Malfavon is transferred from the Purchasing Department after conflict with her supervisor, Bramby Tollen. ...............................2

        B. Rodriguez-Malfavon complains that Principal Wilbur is violating Nevada law by using audio-video cameras throughout the High School. ..................................................................................4

        C. Wilbur retaliates by issuing an Oral Warning and Negative Review. ................................................................................6

        D. Rodriguez-Malfavon is demoted as a result of the Negative Review. ...............................................................................8

    II. PROCEDURAL HISTORY .........................................................10

SUMMARY OF ARGUMENT ............................................................10

ARGUMENT ....................................................................................13

    I. Standard of Review ....................................................................13

    II. Rodriguez-Malfavon engaged in protected speech when notifying Director Stein about Principal Wilbur's potentially illegal conduct. ..........................14

    III. Rodriguez-Malfavon's Complaints About Wiblur's Cameras Were a Substantial and Motivating Factor in the Employment Actions ..................17

IV. The District Court erred in holding that a reasonable jury would necessarily find that Rodriguez-Malfavon would have been demoted for separate reasons ................................................................................................19

CONCLUSION ........................................................................................................23

STATEMENT OF RELATED CASES ...................................................................25

CERTIFICATE OF COMPLIANCE.......................................................................26

CERTIFICATE  OF  SERVICE…………………………………………………..27

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................................13

*City of San Diego v. Roe*, 543 U.S. 77 (2004) ........................................................14

*Connick v. Myers*, 461 U.S. 138 (1983)........................................................... 14, 16

*Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003)................................. 17, 18

*Dahlia v. Rodriguez*, 735 F. 3d 1060 (9th Cir. 2013)....................................... 15, 16

*Davis v. Team Elec. Co.*, 520 F.3d 1080 (9th Cir. 2008) .......................................17

*Desrochers v. City of San Bernardino*, 572 F.3d 703 (9th Cir. 2009)....................16

*Gray v. Union County Intermediate Educ. Dist.*, 520 F.2d 803 (9th Cir. 1975) .....20

*Hartman v. Moore*, 547 U.S. 250 (2006)................................................................22

*Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741 (9th Cir. 2001).. 17, 22

*Leslie v. Grupo ICA*, 198 F.3d 1152 (9th Cir. 1999)...............................................12

*Mt. Healthy City School Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).............. 12, 20

*Nabors Alaska Drilling, Inc. v. NLRB*, 190 F.3d 1008 (9th Cir. 1999)...................22

*O'Brien v. Welty*, 818 F.3d 920 (9th Cir. 2016) .....................................................22

*Passantino v. Johnson & Johnson Consumer Prods., Inc.*,
    212 F.3d 493 (9th Cir. 2000) ........................................................................17

*Pickering v. Board of Education*, 391 U.S. 563 (1968)..........................................14

*Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755 (9th Cir. 2006)..........................22

*Roth v. Veteran's Admin.*, 856 F.2d 1401 (9th Cir. 1988)......................................16

iv

*Thomas v. City of Beaverton*, 379 F.3d 802 (9th Cir. 2004)....................................16

*Thomas v. County of Riverside*, 763 F.3d 1167 (9th Cir. 2014)..............................20

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir. 1987) ...............................................................................................................12

*University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013)...............................................................................................................22

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977)............................................................................... 12, 20

*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002) ............... 17, 18

*Zeballos v. Garcetti*, 361 F.3d 1174 (9th Cir. 2004) ...............................................16

## Statutes

28 U.S.C. § 1291 ......................................................................................................1

42 U.S.C. § 1981 ......................................................................................................2

42 U.S.C. § 1983.................................................................................................1, 10

42 U.S.C. § 2000e ...................................................................................................2

NRS 200.650.......................................................................................................5, 15

## Other Authorities

Charles E. Carpenter, *Concurrent Causation*, 83 U. PA. L. REV. 941, 946 (1935) .22

Jeremiah Smith, *Legal Cause in Actions of Tort*, 25 HARV. L. REV. 103 (1911)....22

## Rules

Fed. R. App. P. 4(a)(1)(A) ........................................................................................1

## STATEMENT OF JURISDICTION

This is an appeal from an order granting summary judgment to Defendant-Appellees Clark County School District ("School District") high school principal Anita Wilbur ("Wilbur") and Associate Superintendent Edward Goldman ("Goldman") on Plaintiff-Appellant Elena Rodriguez-Malfavon ("Rodriguez-Malfavon"). (*See* Trial Court Clerk's Record ("CR") 50; Excerpts of Record ("ER") 001.) The district court entered its order on December 7, 2015. (*Id.*) The matter proceeded to trial on October 3, 2016, and lasted three days. (*See* CR 108; CR 109; CR 110 (minutes of Jury Trial Days 1, 2, and 3).) On October 5, 2016, the jury entered a verdict in favor of the School District. (CR 106.) On October 11, 2016, the district court entered a judgment in favor of the School District. (CR 111, ER 018.) Rodriguez-Malfavon filed a timely notice of appeal on November 10, 2016. (CR 115; ER 019.); *see also* Fed. R. App. P. 4(a)(1)(A) (mandating that in civil matters a notice of appeal must be filed within thirty days of the entry of the order or judgment being appealed). This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUE ON APPEAL

Plaintiff-Appellant Rodriguez-Malfavon appeals from the District Court's grant of summary judgment on her claim of First Amendment retaliation brought against the three Defendants-Appellees –School District, Wilbur and Goldman – under 42 U.S.C. § 1983.

1

For the reasons that follow, Rodriguez-Malfavon submits that a reasonable jury could find in her favor. The District Court's decision granting summary judgment on the First Amendment retaliation claim should therefore be reversed and the case remanded for trial.[1]

## STATEMENT OF THE CASE

### I.    RELEVANT FACTS

Because the District Court granted the summary judgment motion, the following evidence and facts must be read in the light most favorable to Rodriguez-Malfavon.

### A.    Rodriguez-Malfavon is transferred from the Purchasing Department after conflict with her supervisor, Bramby Tollen.

Rodriguez-Malfavon started working in a support staff position for the School District in 1990. The first nineteen years of her employment with the School District were marked with nothing but positive evaluations and promotions.[2]

---

[1] Plaintiff-Appellant also brought claims alleging (1) race and national origin discrimination and retaliation under Title VII, 42 U.S.C. § 2000e *et seq.*, and (2) race and national origin discrimination and retaliation under 42 U.S.C. §§ 1981 and 1983. The District Court granted summary judgment on all claims except for retaliation related to Plaintiff-Appellant's claims of race and national origin discrimination. A jury found in favor of the School District on this claim. Plaintiff-Appellant does not appeal the jury's decision or District Court's grant of summary judgment on these other claims (*i.e.*, except for the First Amendment retaliation claim raised in this brief).

[2] By 2002, Rodriguez-Malfavon was supervising 16 permanent employees in the hiring and placement of over 3,000 substitute teachers in one of the largest school

In the autumn of 2009, however, Bramby Tollen became Rodriguez-Malfavon's supervisor in the Purchasing Department. Rodriguez-Malfavon had worked in that department since January and received a positive evaluation of her work from Alan Ringhofer in the summer of 2009.

Tollen became Rodriguez-Malfavon's supervisor at the end of September 2009. The relationship between Rodriguez-Malfavon and Tollen turned incredibly sour. Within a few weeks, Rodriguez-Malfavon accused Tollen of treating her unfairly and then of racial discrimination. In turn, Tollen accused Rodriguez-Malfavon of insubordination and dishonesty (a fireable offense in the School District) for going first to Tollen's supervisor, Jeff Weiler, to request a transfer.

The situation between Rodriguez-Malfavon and Tollen continued to escalate. In July 2012, Rodriguez-Malfavon filed a formal EEOC charge accusing Tollen of discrimination. (ER at 069.) About a month and a half later, Rodriguez-Malfavon received a negative performance evaluation from Tollen's subordinate, Alan Ringhofer (the same person who had given her a positive evaluation a year earlier). It was Rodriguez-Malfavon's first negative evaluation in over two decades of

---

districts in the United States. Rodriguez-Malfavon worked for Personnel Department with the title of Coordinator III, which is an administrative position. In December 2005, Rodriguez-Malfavon voluntarily transferred out of Human Resources so that she could use her skills as a computer programmer. In January 2009, she was transferred to the Purchasing Department due to budget cuts. Her first supervisor was Alan Ringhofer prior to Bramby Tollen being appointed.

working for the School District and stood in sharp contrast to the evaluation she received a year earlier and, indeed, the previous eighteen years.

After almost a year of turmoil in the Purchasing Department (the department of which Tollen was the head), Tollen finally called Defendant Edward Goldman, the Associate Superintendent of the Educational Services Division. Tollen asked Goldman if he would take Rodriguez-Malfavon into his division as a favor. Goldman agreed.

**B.    Rodriguez-Malfavon complains that Principal Wilbur is violating Nevada law by using audio-video cameras throughout the High School.**

In August 2010, at the start of the school year, the School District transferred Rodriguez-Malfavon from the Purchasing Department to the Academy for Individualized Study High School ("High School"). The High School's principal was Defendant Anita Wilbur.

Shortly after arriving at the High School, Rodriguez-Malfavon learned that Principal Wilbur had installed audio-video cameras throughout the campus that enabled Principal Wilbur to secretly observe and listen to what was taking place. Since Rodriguez-Malfavon held an administrator position, and had just transferred, other teachers and employees complained to Rodriguez-Malfavon about the cameras in Principal Wilbur's office, the front office and even their own offices. Principal Wilbur was spying on everyone. Principal Wilbur could even use the cameras to

4

monitor student guidance counselors when advising disabled children and their parents.

Rodriguez-Malfavon believed that Principal Wilbur's use of cameras to monitor employees, students and their parents violated Nevada law, which makes it illegal to secretly record, monitor or listen to a private conversation of other people "unless authorized to do so by one of the persons engaging in the conversation." NRS 200.650.[3] Even if not illegal, employees, students and teachers might find it invasive to say the least.

At the end of March, Rodriguez-Malfavon met with Principal Wilbur's supervisor, Director Isaac Stein, to complain about Principal Wilbur's use of the cameras. One month later, on April 28, 2011, Director Stein issued a memo to Principal Wilbur notifying her that there would be an investigatory meeting with her the next day, April 29, to discuss "[a]llegations of audio taping employees throughout the work day." (ER 021.) Three weeks after the investigatory meeting

---

[3] NRS 200.650 provides: "Except as otherwise provided in NRS 179.410 to 179.515, inclusive, no person shall intrude upon the privacy of other persons by surreptitiously listening to, monitoring or recording, or attempting to listen to, monitor or record, by means of any mechanical, electronic or other listening device, any private conversation engaged in by such other persons, or disclose the existence, contents, substance, purport, effect or meaning of any such conversation so listened to, monitored or recorded, unless authorized to do so by one of the persons engaging in the conversation." Videotaping and listening to teachers, students and their parents may also violate federal laws pertaining to student privacy.

between Director Stein and Principal Wilbur, Stein issued a "Summary of Conference" to Wilbur that reprimanded her. (ER 022.)

### C. Wilbur retaliates by issuing an Oral Warning and Negative Review.

The very next day after being reprimanded, Principal Wilbur began emailing with Defendant Goldman and Fran Juhasz (Director of Employment Relations) to establish a record on which to base an Oral Warning to Rodriguez-Malfavon.[4] One week later, on May 26, 2011, Wilbur issued an Oral Warning Summary to the Rodriguez-Malfavon referencing purported issues dating back to February (*i.e.*, three months earlier).

Principal Wilbur must have blamed Rodriguez-Malfavon for the reprimand from Director Stein – otherwise, the Oral Warning would make no sense. *None* of the issues cited in the warning had ever been mentioned to Rodriguez-Malfavon before even though they "apparently" happened three months earlier. Indeed, there is not a single document that refers to any of these issues that Principal Wilbur had with Rodriguez-Malfavon that was created before May 20, 2011. Nor does it make

---

[4] A jury could find Wilbur blamed Rodriguez-Malfavon for instigating Stein's investigatory meeting to talk about audio-video cameras. Rodriguez-Malfavon had previously made several complaints about the cameras directly to Wilbur, so Wilbur knew that Rodriguez-Malfavon was concerned about the cameras. Moreover, Rodriguez-Malfavon was a new transfer and attracted the complaints of other employees at the High School.

sense to have two such high-ranking officials involved in an Oral Warning to an administrator unless it was being purposefully used to eliminate Rodriguez-Malfavon from the position.[5]

Moreover, in the Oral Warning, Principal Wilbur's statements to Rodriguez-Malfavon indicate that she believes Wilbur was behind the complaints about the cameras. Wilbur explicitly highlights by circling "directive #6" in the Oral Warning to Rodriguez-Malfavon, which states that Wilbur must not "take any retaliatory action against any employee." (ER 022.) Principal Wilbur stated: "I also need you to be aware of what I received yesterday. Please refer to directive Item # 6."[6] (ER 051.) A jury could find that Wilbur was concerned that the Oral Warning could constitute "retaliatory action" because Wilbur believed (accurately) that Rodriguez-Malfavon was the person complaining the audio-video monitoring. Indeed, the directive instructed Wilbur not to discuss about the allegations with anyone –

---

[5] The May 27th email from Director Fran Juhasz to Maria Lopez shows that the Defendants were seeking outright dismissal. (ER 052.) ("We are addressing some issues with her, but they will not end in dismissal from the district.").

[6] Given the stilted tone of this sentence and entire email, and the fact that there are *no* documents prior to this date (even just one or two day before), a jury could find that Defendant Wilbur inserted it to attempt to cover her tracks in retaliating against Rodriguez-Malfavon (ER 051.) Indeed, in the context of a simple oral warning, there would be no good reason for her to mention Director Stein's summary of conference especially because Wilbur was told not to discuss it with other employees (including Defendant Goldman and Director Juhasz).

something that Principal Wilbur violated by referring to it in the email to Director Stein.

Defendant Goldman, the Associate Superintendent who facilitated Rodriguez-Malfavon's transfer, was directly involved in the decision to issue the Oral Warning to the Plaintiff. On May 24, Juhasz wrote to Wilbur:

> I'm working with Dr. Goldman on this. Per Dr. Goldman, please do not do ANYTHING further until I hear back from him. He's going to review the document and then give me his final determination. We can't mail anything out or give her anything until we hear from him.

(ER 031.) This was clearly a team effort by Defendants Wilbur and Goldman.

Finally, the level of effort on this Oral Warning was extraordinary. Just one month earlier before Director Stein, Principal Wilbur claimed that she didn't know if certain school resources (*e.g.*, Skype or a shared folder) were being misused because she "didn't have the time to monitor it" even though it was her responsibility. (ER 022.) Yet, in preparing to issue an Oral Warning, there are 30 pages of emails and documents (complete with multiple edits and notes) in the week immediately following Director Stein's Summary of Conference.

> ### D.   Rodriguez-Malfavon is demoted as a result of the Negative Review.

The Oral Warning issued to Rodriguez-Malfavon on May 26 was quickly followed up by a second negative Annual Evaluation based on that Oral Warning. (ER 055.) An email chain shows how the Annual Evaluation came about. (ER 056-

065.) The evaluation was given advice unrelated to Rodriguez-Malfavon's performance as Director Juhasz stated, "it should be an 'unsat [unsatisfactory],' with at least one of the areas receiving a '1' evaluation." (ER 063.) The goal was not to be accurate but to eliminate her position.

Superintendent Goldman was also intimately involved in discipline of Rodriguez-Malfavon. On May 31th, Director Juhasz wrote, "we'll have Eddie [Goldman] do a final." (ER 061.) On June 3rd Director Juhasz wrote, "The evaluation is approved by Dr. Goldman for issuing." (ER 056); *see also* (ER 062) (Goldman's approval).

This is an extraordinary amount of involvement for an administrator's evaluation: two high level officials in the fifth largest school district in the United States were intimately involved in a principal giving a mere administrator an annual evaluation. Defendants cannot point to a single other person that received this level of attention – and all of it came about after Rodriguez-Malfavon blew the whistle on Principal Wilbur. Such extraordinary and unusual involvement in an annual review is more evidence of retaliation.

Just a few weeks later, on June 17th, Rodriguez-Malfavon received notice that she would lose her position because she had received her second negative annual evaluation and under the union contract "[a]dministrators who have been twice rated

as unsatisfactory within the last two (2) successive contract years will next be reduced in force." (ER 067.)

## II.    PROCEDURAL HISTORY

Rodriguez-Malfavon subsequently sued and now seeks to be retroactively reinstated to her administrative position on the ground that her second unsatisfactory annual evaluations was the result of illegal retaliation for her whistleblowing in violation of 42 U.S.C. § 1983.[7]

### SUMMARY OF ARGUMENT

The sole question raised on this appeal is whether a reasonable jury could find that the principal of a high school (Defendant-Appellee Anita Wilbur) and assistant superintendent (Defendant-Appellee Edward Goldman) retaliated against a new administrator (Plaintiff-Appellant Elena Rodriguez-Malfavon) after she reported that Principal Wilbur was using audio-video cameras to monitor, listen to, and videotape teachers, students and their parents.[8] As internal emails demonstrate, a

---

[7] 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

[8] The School District is a defendant because Defendants Wilbur and Goldman were acting as agents on its behalf and their actions are imputed to it.

mere *one day after* Defendant Wilbur's supervisor (Director Isaac Stein) reprimanded Principal Wilbur for this behavior, Principal Wilbur and Assistant Superintendent Goldman began laying the groundwork to issue a negative evaluation of Plaintiff Rodriguez-Malfavon that resulted in her being demoted. (ER 025-054, ER 056-065)

Defendant Goldman was the School District's chief contract negotiator earlier in that year. Thus, Defendant Goldman knew that under the negotiated evaluation system the School District could demote an administrator who had received two negative evaluations without regard to seniority and other rights if there was a reduction in force due to budget constraints.[9] (ER 067.) Defendants Goldman and Wilbur also knew that this would be Rodriguez-Malfavon's second negative evaluation. As a direct result of this second negative evaluation, Rodriguez-Malfavon was in fact demoted and assigned to a support staff position effective July 1, 2011. (ER 067-068.)

The District Court granted summary judgment against Plaintiff on the grounds that "the defendants have presented evidence that they would have taken the adverse actions against [Rodriguez-Malfavon] even if she had not engaged in protected speech, because of job performance issues." (ER 015.) (District Court's opinion).

---

[9] The provision that applied was Article 26-2-2 of the Negotiated Agreement between the Clark County School District and the Clark County Association of School Administrators Professional-Technical Employees. (ER 067.)

The District Court erred because the "same decision" defense is just that: an affirmative defense. The Supreme Court has long held that once plaintiff establishes that her constitutionally protected speech "was a 'substantial' . . . or . . . 'motivating factor' in the [alleged wrongdoer]'s decision," the defendant may show "by a preponderance of the evidence that it would have reached the same decision . . . even in the absence of the protected conduct." *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 285-87 (1977) (establishing the "same decision" affirmative defense to claims of First Amendment retaliation). Defendants bear the burden of proving this affirmative defense. *See* id; *see also Village of Arlington Heights v. Metro. Housing Devel. Corp.*, 429 U.S. 252, 271 n.21 (1977).

Summary judgment cannot be granted merely because defendants have presented some evidence supporting their affirmative defense. Rather, summary judgment may only be granted if the admissible evidence is so overwhelming that *every* reasonable jury would be required to conclude that defendant satisfied its burden of proof.[10] If a reasonable jury could, when viewing the evidence in the light

---

[10] Thus, the court should not consider inadmissible hearsay (*i.e.*, out-of-court statements presented for the truth therein) when considering whether the evidence is so overwhelming that the affirmative defense must be granted. Moreover, credibility decisions, particularly of witnesses, are for the jury alone. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) (district court could not disregard evidence on the ground that no reasonable jury would believe it); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ("Nor does the judge [on summary judgment] make credibility determinations with respect to statements

most favorable to Rodriguez-Malfavon, find that the Defendants did not prove this affirmative defense by a preponderance of the evidence, summary judgment cannot be granted.

For these reasons, and those below, Rodriguez-Malfavon respectfully submits that the District Court's decision be reversed and remanded for a trial before a jury.

## ARGUMENT

### I.    Standard of Review

The Court reviews *de novo* a district court's grant of summary judgment. In reviewing summary judgment in favor of a defendant, the evidence must be viewed in the light most favorable to plaintiff. The ultimate question is whether the evidence, when read in such a light, would allow a reasonable jury to return a verdict in plaintiff's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, summary judgment is appropriate only when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

/ / /

/ / /

/ / /

---

made in affidavits, answers to interrogatories, admissions, or depositions"). Here, all credibility decisions must favor Rodriguez-Malfavon.

## II.    Rodriguez-Malfavon engaged in protected speech when notifying Director Stein about Principal Wilbur's potentially illegal conduct.

While the District Court did not address whether the First Amendment protected Rodriguez-Malfavon in speaking to Director Stein about Principal Wilbur's illegal use of audio-video cameras, the Supreme Court and this Court have made it clear that whistleblowing is valuable, protected speech.

The Supreme Court has long held that public employees may not "be compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public [institutions] in which they work.'" *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968); *see also Connick v. Myers*, 461 U.S. 138, 140 (1983) (holding public employees "do not "relinquish First Amendment rights to comment on matters of public interest by virtue of government employment"").

Underlying this principle is the recognition by courts that "public employees are often the members of the community who are likely to have informed opinions as to the operations of their public employers." *City of San Diego v. Roe*, 543 U.S. 77, 82 (2004) (per curiam). "Were they not able to speak on these matters, the community would be deprived of informed opinions on important public issues." *Id.* Indeed, this Court has held: "It may often be the case that, unless public employees are willing to blow the whistle, government corruption and abuse would persist

undetected and undeterred." *Dahlia v. Rodriguez*, 735 F. 3d 1060, 1067 (9th Cir. 2013).

In this case, Rodriguez-Malfavon was complaining about illegal conduct by her supervisor, Principal Wilbur, who was violating NRS 200.650 and potentially violating Federal student privacy rights. Other employees at the High School including the guidance counselors were concerned and had discussed it with Rodriguez-Malfavon.

The accusations were serious enough that Principal Wilbur's supervisor, Director Stein, called an investigatory conference to discuss the allegations. (ER 021.) Director Stein then issued a Summary of Conference ordering Wilbur not to audio record employees, students or parents.[11] (ER 022.) Far from a perceived slight or purely internal employment matter, Rodriguez-Malfavon was reporting illegal behavior that violated the School District's policies and could have eventually exposed it to a significant lawsuit by an outraged parent. Rodriguez-Malfavon did exactly what taxpaying citizens would want her to do: reported it to a higher-ranking supervisor.

Because Rodriguez-Malfavon's speech related to "potential wrongdoing or breach of public trust" by public employees, it also involved a matter of public

---

[11] (ER 022) (stating that Principal Wilbur must "[e]nsure compliance with all CCSD policies, regulations and procedures pertaining to surveillance procedures").

concern, and therefore is protected under the First Amendment. *Connick v. Myers*, 461 U.S. 138, 148 (1983); *see also Thomas v. City of Beaverton*, 379 F.3d 802, 804 (9th Cir. 2004) ("Unlawful conduct by a government employee or illegal activity within a government agency is a matter of public concern"); *Roth v. Veteran's Admin.*, 856 F.2d 1401, 1406 (9th Cir. 1988) (finding that an employee's reports of safety regulation violations, unethical conduct, misuse of public funds and mismanagement constituted speech of public concern); *Zeballos v. Garcetti*, 361 F.3d 1174, 1179 (9th Cir. 2004) (holding that a plaintiff engaged in protected speech when he alleged criminal wrongdoing by a police officer even though those allegations proved to be erroneous).

Indeed, even if a plaintiff's statements are addressed *only* to coworkers that does not change this conclusion. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1069 (9th Cir. 2013) (noting that whether or not a public employee expresses his views inside his office is not dispositive as to the question of whether plaintiff's speech is protected); *Desrochers v. City of San Bernardino*, 572 F.3d 703, 709 (9th Cir. 2009) (emphasizing that "[t]he 'content' element is the greatest single factor in the *Connick* inquiry").

In sum, Rodriguez-Malfavon's whistleblowing was clearly speech protected by the First Amendment and any retaliation against her would be illegal.

16

### III. Rodriguez-Malfavon's Complaints About Wiblur's Cameras Were a Substantial and Motivating Factor in the Employment Actions

To establish that retaliation was a substantial or motivating factor behind an adverse employment action, a plaintiff may introduce evidence that (1) the speech and adverse action were proximate in time, such that a jury could infer that the action took place in retaliation for the speech; *or* (2) the employer expressed opposition to the speech, either to the speaker or to others; *or* (3) the proffered explanations for the adverse action were false and pretextual. *See Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) (citing *Keyser v. Sacramento City Unified School District*, 265 F.3d 741 (9th Cir. 2001)) (stating there are at least three evidentiary paths to prove First Amendment retaliation).

Here, the evidence shows that adverse action that culminated in the second negative evaluation began *one day* after Principal Wilbur received a reprimand from Director Stein (*i.e.*, May 19th) and three weeks after Principal Wilbur was first notified (*i.e.*, April 28th). (ER 051) (email dated May 20th). *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008) ("We have held that 'causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity.'") (quoting *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002)); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000) ("[W]hen adverse employment decisions are taken

within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred.").[12]

Rodriguez-Malfavon also has evidence that the reasons for the second negative evaluation were pretext, which is an independent ground that would allow a jury to find Defendants Wilbur and Goldman retaliated against her. Rodriguez-Malfavon contends, and it must be credited in her favor at this stage of the proceeding, that this job performance complaints were false. The documents that "support" Defendants' position are classic hearsay and cannot be credited as true. Indeed, the hearsay rule is designed primarily for situations such as this one where people will produce documents with false statements and attempt to present the underlying facts as true. The proper way to proceed is for the authors of the documents to testify and more importantly be cross-examined so that a jury can determine the veracity. Regardless, at this stage, the evidence must be viewed as falsified and, therefore, pretext.

/ / /

---

[12] Durations of four months and greater between the protected activity and adverse action have been found to be too remote to support a finding of causation based on temporal proximity. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (citing cases granting summary judgment or overturning jury verdicts). However, the Court has also held that "[d]epending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation." *Coszalter*, 320 F.3d at 977.

Moreover, it bears emphasizing that while Defendant Wilbur contends that she was unhappy with Rodriguez-Malfavon's performance starting in February not a single document recorded this unhappiness prior to May 20th – not even an email to another person. This is particularly striking given the thirty pages of emails and documents that the defendants started creating after May 19th (the date of Director Stein's Summary of Conference). (ER 025-065)

Thus, the evidence shows that after being notified that she was being investigated for using video-audio cameras and receiving a reprimand from Director Stein, Defendant Wilbur almost immediately decided to begin building a paper trial, which was followed by issuing Rodriguez-Malfavon an oral warning and an unsatisfactory evaluation. A jury could logically – and easily – infer that Rodriguez-Malfavon suffered these adverse employment actions in retaliation for her whistleblowing.

### IV. The District Court erred in holding that a reasonable jury would necessarily find that Rodriguez-Malfavon would have been demoted for separate reasons

The crux of the District Court's decision was:

> the defendants have presented evidence that they would have taken the adverse actions against her even if she had not engaged in protected speech, because of job performance issues.

(ER 015.) The Court further stated: "Simply stating that the negative evaluation was retaliatory therefore does not rebut the defendants' argument that they still would

have given her the negative evaluation based on poor performance even if she had not complained about the audio recording." (ER 016.)

The District Court clearly erred by putting the burden on the plaintiff to "rebut the defendants' argument." (ER 016.) The Supreme Court, however, has held that defendant bears the burden. *See Mt. Healthy City School Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) (holding that First Amendment bars the government from firing an employee because of her exercise of protected speech rights) (citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 270-71, n.21 (1977); *see also Thomas v. County of Riverside*, 763 F.3d 1167, 1169 (9th Cir. 2014) (per curiam) (explaining that First Amendment retaliation cases are governed by *Mt. Healthy*).

*Mt. Healthy* involved an untenured teacher named Fred Doyle and the school board fighting over regarding, *inter alia*, the teacher dress code. Doyle reported the contents of a school memorandum on the teacher dress code to a radio disk jockey, who in turn promptly reported it as news. One month later, the School Board decided not to renew Doyle's contract. *See id.* at 282. The District Court only required Doyle to show that his speech was a substantial cause of the retaliation.[13]

/ / /

---

[13] *See, e.g.*, *Gray v. Union County Intermediate Educ. Dist.*, 520 F.2d 803, 806 (9th Cir. 1975) ("A decision to terminate employment of a teacher which is only partially in retaliation for the exercise of a constitutional right is unlawful.")

In an opinion authored by then-Justice Rehnquist, the Supreme Court unanimously rejected the substantial-factor test used by the District Court. *See id.* at 285. Such a test might bestow an undeserved windfall on Doyle. *See id.* The Court reasoned that "[t]he constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct." *Id.* at 285-86.

Although the Court recognized that the board had acted unlawfully in considering Doyle's protected conduct, the Court suggested that Doyle was not entitled to reinstatement if the Board would have terminated his contract regardless of the fight over his exercise of First Amendment rights. The Court established a causation defense providing that if the permissible motivations for the government's action constituted an "independent source" of the adverse result, then that result cannot be fairly blamed on the impermissible motive, and no remedy is warranted.

Once a plaintiff shows that her constitutionally protected conduct was a "substantial" or "motivating factor," the burden shifts to the defendant to show by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct. If there is a finding that retaliation was not the but-for cause of the action complained of, "the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of

some retaliatory animus in the official's mind." *Hartman v. Moore*, 547 U.S. 250, 260 (2006).[14]

Thus, this Court has repeatedly held that defendants must prove that the result was caused by an independent source. *See, e.g.*, *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016); *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006); *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 750 (9th Cir. 2001); *Nabors Alaska Drilling, Inc. v. NLRB*, 190 F.3d 1008, 1015 (9th Cir. 1999) (holding that once the employee makes its prima facie showing, "[t]he burden then shifts to the employer to prove that legitimate reasons supported the termination").

The District Court not only erred by putting the burden of proof on Rodriguez-Malfavon, but also by ignoring the fact that the Defendants did not point to an *independent* source as a reason for the demotion. Rodriguez-Malfavon's argument is that the purported "job performances" issues only came about because of her whistleblowing. Rodriguez-Malfavon contends that these issues are false; she performed her job well.

/ / /

---

[14] This holding interpreting remedies for Constitutional violations is consistent with the common law. *See generally* Charles E. Carpenter, *Concurrent Causation*, 83 U. PA. L. REV. 941, 946 (1935); Jeremiah Smith, *Legal Cause in Actions of Tort*, 25 HARV. L. REV. 103 (1911). Title VII, which is statutory in nature, uses a different framework for retaliation claims. *See University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013). The different retaliatory frameworks may have been the source of confusion for the District Court.

But even if she had room for improvement at her new job, the extent to which these issues only came about after her whistleblowing and then led to a negative annual evaluation was driven retaliatory animus. Under the District Court's reasoning, only employees with perfect records may blow the whistle on potentially illegal behavior – a holding that would clearly chill valued speech.

Put another way, defendants bear the burden of showing a different reason for her demotion outside of the second negative evaluation once Plaintiff proves that it was driven by animus for her whistleblowing. Moreover, the evidence must be such that *every* reasonable jury would have to reach that conclusion. Even if Defendants pointed to another reason for Rodriguez-Malfavon's demotion, they cannot meet the burden of proof needed for summary judgment to be entered into their favor.

## CONCLUSION

When read in the light most favorable to Plaintiff-Appellant, the evidence shows that Rodriguez-Malfavon spoke out on what she believed to a high school principal's illegal audio-videotaping and monitoring of teachers, students and parents. After the principal was reprimanded by Director Stein, the principal and a superintendent retaliated against Rodriguez-Malfavon by building a paper trial of false job performance issues that led to a negative annual evaluation and demotion. The District Court erred by encroaching on the jury's role in determining the facts

For this reason, and those above, the District Court's grant of summary judgment on Plaintiff-Appellant's First Amendment retaliation claim should be reversed and the case remanded for trial.

DATED this 24th day of May, 2017.

*/s/ Richard Segerblom, Esq.*
Richard Segerblom, Esq.
Nevada Bar No. 1010
701 E. Bridger Ave., # 520
Las Vegas, NV 89101
Telephone: 702-388-9600
Facsimile: 702-385-2909
Email: rsegerblom@lvcoxmail.com
*Attorney for Plaintiff-Appellant*
*Elena Rodriguez-Malfavon*

24

## STATEMENT OF RELATED CASES

Plaintiff-Appellant is not aware of any related cases pending in this circuit.

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit R. 32-1, I hereby verify that the foregoing brief is proportionally spaced 14-point font, and contains 4,463 words.

DATED this 24th day of May, 2017.

*/s/ Richard Segerblom, Esq.*
Richard Segerblom, Esq.
Nevada Bar No. 1010
701 E. Bridger Ave., # 520
Las Vegas, NV 89101
Telephone: 702-388-9600
Facsimile: 702-385-2909
Email: rsegerblom@lvcoxmail.com
*Attorney for Plaintiff-Appellant*
*Elena Rodriguez-Malfavon*

26

CA No. 16-17076

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

***

| | |
|---|---|
| ELENA RODRIGUEZ-MALFAVON, | |
| Plaintiff-Appellant, | D.C. No. 2:12-cv-01673-APG-PAL (Nevada, Las Vegas) |
| v. | |
| CLARK COUNTY SCHOOL DISTRICT, et al. | **CERTIFICATE OF SERVICE – APPELLANT'S OPENING BRIEF** |
| Defendants-Appellees. | |

The undersigned hereby certifies that he is a person of such age and discretion as to be competent to serve papers.

That on May 24, 2017, he served via CM/ECF a copy of the above and foregoing APPELLANT'S OPENING BRIEF to the persons below:

Patrick H. Hicks
Littler Mendelson, P.C.
1255 Treat Boulevard
Walnut Creek, CA 94597
Email: phicks@littler.com

Patrick H. Hicks and Ethan Thomas
Littler Mendelson
3960 Howard Hughes Pkwy, Ste 300
Las Vegas, NV 89169
Email: phicks@littler.com;
edthomas@littler.com

*/s/ Richard Segerblom, Esq.*
Richard Segerblom, Esq.

27